**UNITED STATES of America,**

v.

**Radamas Almaguer UROQUIZA, Raul Dieguez Rodriguez, Guillermo Bertoli, and Edwin Perez, a/k/a "Luis Perez," Defendants.**

**No. 83 Cr. 698.**

United States District Court,
S.D. New York.

Dec. 28, 1983.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for United States of America; Neil S. Cartusciello, Asst. U.S. Atty., New York City, of counsel.

Howard A. Jaffe, New York City, for defendant Edwin Perez.

Martin L. Schmukler, New York City, for defendant Raul Dieguez Rodriguez.

Lawrence Hochheiser, New York City, for defendant Guillermo Bertoli.

Robert Blossner, New York City, for defendant Radamas Almaguer Uroquiza.

## OPINION

EDWARD WEINFELD, District Judge.

Defendant Edwin Perez ("Perez") moves to suppress evidence seized from his apartment pursuant to a search warrant and statements made by him during the search; for a trial separate from that of his three codefendants, Radamus Almaguer Uroquiza ("Uroquiza"), Raul Dieguez Rodriguez ("Rodriguez"), and Guillermo Bertoli ("Bertoli"); and for discovery and a bill of particulars. Perez is charged with conspiracy to distribute and possess with intent to distribute cocaine, a Schedule II drug,[1] and with a single count of unlawful possession of cocaine.[2]

At 8:45 a.m. on October 26, 1983, Judge Leonard B. Sand of this Court issued warrants authorizing searches of three premises in The Bronx, New York: (1) 1210 Castle Hill Avenue (2d floor); (2) 2168 Story Avenue (2d floor); and (3) 1598 Union Port Avenue (apartment 1C). The last is Perez's apartment.

Judge Sand based his order upon the oral, telephone affidavit of Detective Robert Johnson of the New York City Police Department, who had been working under cover with the Joint New York Drug Enforcement Task Force. Detective Johnson affirmed under oath that on the evening of October 25, 1983, he personally observed a quantity of cocaine, drug paraphernalia, and two automatic weapons at the Story Avenue apartment. He also swore that while at the apartment that evening he negotiated the purchase of five kilograms of cocaine from defendant Uroquiza. In addition, the affidavit contained the following facts relating specifically to the Union Port Avenue apartment:

> Prior to [my] entering the Story Avenue apartment, surveillance agents of the Drug Enforcement Administration observed an individual identified as Raul Marcos Dieguez [Rodriguez], who was subsequently arrested early this morning or late last evening. They observed him leave 1598 Union Port Avenue, Bronx, New York, and travel to the Story Avenue apartment with a duffel bag. That individual [Rodriguez] informed [a DEA confidential] informant, who was present in the apartment when Dieguez arrived, that he was leaving the Story Avenue apartment in order to retrieve two kilograms of cocaine. Thereafter, he [Rodriguez] was seen by the informant reenter the Story Avenue apartment with a duffel bag, from which he [Rodriguez] removed two kilograms of suspected cocaine.[3]
>
> One of the individuals involved in the negotiations during the evening was later arrested at 1598 Union Port Avenue, Bronx, New York, apartment 1C.

Upon the argument the government conceded that prior to the execution of the warrants no one connected with the alleged crimes had been arrested at Perez's apartment, and that Detective Johnson, who prepared his affidavit with the aid of Assistant United States Attorney Charles G. LaBella and Investigator John P. McGivern of the New York State Police Department following the early morning arrests of Uroquiza, Rodriguez, and Bertoli, thus mistakenly swore to an arrest at the Union Port Avenue apartment. As indicated by Investigator McGivern's affidavit submitted in opposition to the motion, the facts were that at 2:15 a.m. on October 26, 1983, Bertoli was

---

**1.** See 21 U.S.C. § 846 (1982).

**2.** 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) (1982).

**3.** Tr. at 4, *United States v. Premises Known as "1210 Castle Hill Avenue, 2d Floor, Bronx, New York"* (S.D.N.Y. Oct. 26, 1983).

arrested within blocks of the Perez apartment in a car which, as indicated by the papers found on Bertoli's person, belonged to Perez. McGivern further asserts that, five hours before his arrest, Bertoli, along with Uroquiza, used the Perez automobile to deliver cocaine to the Story Avenue apartment.

■ Perez's principal motion is for an evidentiary hearing for the purpose of controverting the affidavit supporting the warrant to search his apartment. Under *Franks v. Delaware*,[4] the Court must grant Perez's request upon a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause."[5]

■ Notwithstanding the conceded factual inaccuracy, the Court finds, based on the affidavits, memoranda, and arguments of counsel, that Perez has failed to make the showing required by the first prong of *Franks*—a substantial showing of a knowing and intentional or reckless misstatement. As the government suggests, there was nothing to be gained by linking the Perez apartment to the cocaine deal by an arrest at the apartment as opposed to the automobile registration papers found on Bertoli at the time of his arrest.[6] Indeed, defendant does not deny that the number of the Perez apartment was obtained pursuant to a lawful search of Bertoli's person, but argues instead that Detective Johnson recklessly relied on the assertions of Investigator McGivern, who in turn relied on the statements of the officer who arrested Bertoli, Detective Alphonse Ripandelli. Perez offers no facts to support this charge, which in essence challenges basic investigatory procedures that have been upheld on numerous occasions by the United States Supreme Court.[7]

The Court also finds that Perez has failed to make the showing required by *Franks'* second prong—that the alleged false statement was necessary to the finding of probable cause. In light of the affidavits presented there can be no question that the inaccuracy here—that the link between the Perez apartment and cocaine dealings was erroneously indicated by an arrest at the apartment—does not affect the logical inference to be drawn from the uncontroverted facts sworn to by Detective Johnson: that it was reasonable to believe that cocaine was present at the Perez apartment. Rodriguez' departure from the Union Port Avenue apartment with a hitherto unseen duffel bag, which later was used to transport cocaine, the numerous facts—corroborating the informant's veracity and basis of knowledge, and the specificity with which the apartment is described amply support Judge Sand's probable cause findings.[8] Given the Court's ruling, it is not necessary to consider Perez's other challenges to Judge Sand's orders, or his argument that incriminating statements made by him at the time of the search must be suppressed as "fruits of the poisonous tree."[9]

■ The defendant's other motions—for severance and for a bill of particulars and discovery—are without substance. It is the well-settled law of this Circuit that absent a clear showing of prejudice defendants charged with participation in a single conspiracy should be tried together.[10] No facts indicating prejudicial joinder, other

---

4. 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

5. *Id.* at 155–56, 98 S.Ct. at 2676–77.

6. *Cf. United States v. Davis,* 714 F.2d 896, 898 (9th Cir.1983) (false statement of personal knowledge of facts contained in affidavit).

7. *See, e.g., Illinois v. Andreas,* —— U.S. ——, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983); *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

8. *See Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 2332, 2334, 76 L.Ed.2d 527 (1983).

9. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

10. *See, e.g., United States v. Carson,* 702 F.2d 351, 363 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983).

than those present in every conspiracy case, are alleged. Defendant's requests for discovery and a bill of particulars encompass far more information than he is entitled to under the Rules of Criminal Procedure and the many decisions interpreting them.[11] The defendant has received all the information and particulars he is entitled to under the Rules.

All the motions of the defendant Perez are denied.

So ordered.

---

**11.** *See, e.g., United States v. Wilson,* 565 F.Supp. 1416, 1437–38 (S.D.N.Y.1983).